2022 IL App (1st) 192063

No. 1-19-2063

March 21, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | Cir. Ct. No. 19 CR 1595 |
| v. | ) | |
| FREDDY AYALA | ) | The Honorable |
| | ) | Vincent M. Gaughan |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We reverse and remand for a new trial where defendant's trial counsel provided ineffective assistance by failing to offer the pattern instruction defining "knowingly" in response to a jury question about the definition of "knowingly."

¶ 2   A jury found Freddy Ayala guilty of unlawful use of a weapon by a felon (UUWF). Ayala argues on appeal that his attorney provided ineffective assistance when he failed to offer the pattern instruction defining "knowingly." We agree with Ayala, and therefore, reverse the trial court's judgment and remand for a new trial.

¶ 3                                I. BACKGROUND

¶ 4     On January 14, 2019, police, executing a search warrant, arrested Ayala on charges of unlawful use of a weapon by a felon.  See 720 ILCS 5/24-1.1 (West 2018).

¶ 5     At the start of the jury trial, the judge said to the venire:

"The next constitutional principle I want to talk to you about is anybody placed on trial in a criminal case does not have to produce any evidence to show their innocence.  Again, like I had emphasized before, the burden of proof is on the State and that burden stays with the State throughout the entire case.  The defendant can rely upon the presumption of innocence.

Is there anybody who does not understand that constitutional principle or who does not understand that constitutional principle in the inner or outer part of the courtroom?  Please raise your hand.  And again, nobody's raised their hand."

¶ 6     Defense counsel did not object.

¶ 7     The parties stipulated that a court had previously convicted Ayala of a felony.  Officer Jaime Acosta searched the apartment identified in the warrant.  Acosta testified that the apartment had two bedrooms, but only one showed signs of use as a bedroom.  The other appeared to serve as storage space.  At the bottom of a dresser in the occupied bedroom, Acosta found a Glock handgun hidden behind a speaker.  Other officers found ammunition hidden in the apartment.  They also found men's clothing and bills addressed to Ayala in the occupied bedroom.

¶ 8     Acosta saw only police and Ayala in the apartment at the time of the search.  Acosta asked Ayala, "You live here by yourself?" Ayala answered, "Yes, sir. This is my mom and sister's house." Acosta asked, "You mean, the apartment building?" Ayala answered, "No, this is my

apartment. This ain't my building." Ayala admitted he had keys to the apartment. Acosta admitted police never determined who owned the building and never contacted Ayala's mother. Police never looked for a lease.

¶ 9    Defense counsel did not object to the prosecution's jury instructions. The instructions did not include Illinois Pattern Jury Instructions, Criminal, No. 5.01B (4th ed. 2000) (hereinafter IPI Criminal 4th), which defines "knowingly." During deliberations, the jury sent the judge a note: "[D]efine *knowingly possessed*. Does this mean he was aware that those items were in his possession?" (Emphasis in original.) The prosecution and defense counsel again did not suggest use of IPI Criminal 4th 5.01B. Neither party objected when the judge instructed the jury, "You have all of the evidence and all of the instructions. Please continue to deliberate."

¶ 10    The jury found Ayala guilty on three counts of UUWF. The trial court sentenced Ayala to concurrent terms of 10 years on the three counts. Ayala now appeals.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, Ayala argues (1) the State did not prove beyond a reasonable doubt that he knew of the presence of the contraband; (2) trial counsel was ineffective by failing to offer IPI Criminal 4th 5.01B in response to the jury's question; (3) the trial court violated Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. July 1, 2012)) by failing to ask the venire members whether they accepted the principle that the defendant may rely on the presumption of innocence; and  (4) the trial court abused its discretion by imposing an excessive sentence.

¶ 13                             Sufficiency of the Evidence

¶ 14    In assessing the sufficiency of evidence, a reviewing court considers whether, after viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985). The reviewing court shall determine whether the evidence reasonably supports a finding of guilt beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280, 818 N.E.2d 304 (2004). A conviction will not be reversed due to insufficient evidence unless the evidence presented is "so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Rowell*, 229 Ill. 2d 82, 98, 890 N.E.2d 487 (2008).

¶ 15    To prove UUWF, the prosecution must show that a defendant previously convicted of a felony knowingly possessed a firearm. 720 ILCS 5/24-1.1(a) (West 2018); *People v. White*, 2021 IL App (1st) 191095, ¶ 30.  Ayala admits his prior felony conviction.  The prosecution admits it did not prove actual possession but argues that it proved constructive possession.

¶ 16    "To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found. *People v. Davis*, 2017 IL App (1st) 142263, ¶ 39. "Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found." *Id*.  "The defendant's control over the location where weapons are found gives rise to an inference that he possessed the weapons. [Citation.] Habitation in the premises where contraband is discovered is sufficient evidence of control to constitute constructive possession." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17, 965 N.E.2d 1135.  "Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them." *People v. Lawton*, 253 Ill. App. 3d 144, 147, 625 N.E.2d 348, 350 (1993).

¶ 17    Acosta testified that Ayala admitted he lived in the apartment.  While Ayala indicated his mother and sister had some interest in the apartment, police found only men's clothes in the bedroom where they found the gun.  Police also found bills addressed to Ayala in that bedroom.  The evidence supports the inference that Ayala, and no one else, used the bedroom where police found the gun.  A reasonable trier of fact could infer from the evidence that Ayala controlled the apartment and knew about the gun in his dresser and the ammunition found in the apartment.  See *Spencer*, 2012 IL App (1st) 102094, ¶ 18. Hence, we find the evidence was sufficient to prove guilt beyond a reasonable doubt.

¶ 18                                     Jury Question

¶ 19    Ayala argues his attorney provided ineffective assistance by failing to offer IPI Criminal 4th 5.01B in response to the jury's question.  The jury's question focused on the central issue in the case: Whether the prosecution proved, beyond a reasonable doubt, that Ayala knowingly possessed the gun and ammunition found in the apartment.  Instruction 5.01B provides: "A person *** acts knowingly with regard to *** the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of such nature or that such circumstances exist.  Knowledge of a material fact includes awareness of the substantial probability that such fact exists."

¶ 20    Our supreme court clarified the relevant principles:

> "A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or

if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another. [Citation.] However, jurors are entitled to have their inquiries answered. Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. [Citation.] This is true even though the jury was properly instructed originally." *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994).

¶ 21 The appellate court in *People v. Lowry*, 354 Ill. App. 3d 760, 821 N.E.2d 649 (2004), applied the principles from *Childs* in a case like the one before us. In *Lowry*, the prosecution sought to prove the defendant committed aggravated battery, which required proof that the defendant knowingly caused an injury. The jury sent a note seeking a definition of "knowingly". Defense counsel agreed with the State that no further instruction was needed. The jury found the defendant guilty of aggravated battery.

¶ 22 The appellate court reversed the conviction and remanded for a new trial. The court reasoned that the jury should be instructed on any question of law where a jury manifest confusion or doubt. The court found that considering the specific question by the jurors demonstrating confusion over the term "knowingly," IPI Criminal 4th No. 5.01B should have been given to the jurors. *Lowry*, 354 Ill. App. 3d at 766-67. Therefore, the court held defense counsel provided ineffective assistance by failing to suggest the IPI jury instruction.

¶ 23 Defense counsel in *People v. Sperry*, 2020 IL App (2d) 180296, similarly failed to request IPI Criminal 4th 5.01B when the jury asked for a definition of "knowingly." The *Sperry* court held:

"[O]nce a jury asks for clarification, the issue is not whether the instructions were legally proper, but rather, were they understood by the jury. (citation). The fact that the jury asked the question shows at least some jurors did not find the instructions helpful when applying them to the case facts. [Citation.] As such, since IPI Criminal 4th No. 5.01B's addition in 1989, a general rule has emerged: if a jury asks the court to define a mental state term, or manifests confusion or doubt regarding such a term's meaning, the court must instruct them accordingly. [Citations.]

\*\*\*

\*\*\* During deliberations, the jury raised a question as to the meaning of 'knowingly.' That term directly related to the defendant's mental state, which was the critical issue at trial. Rather than suggesting that the jury receive the applicable Illinois Pattern Jury Instruction that defined 'knowingly,' defense counsel instead acquiesced with the State to withhold the instruction. As a result, the jury did not receive the guidance sought. Applying *Lowry*, we hold that the defense counsel's performance was deficient and prejudiced the defendant." *Sperry*, 2020 IL App (2d) 180296, ¶¶ 15-18.

¶ 24    The *Sperry* court further noted, "Defense counsel's failure to request proper instruction for the jury cannot be considered strategy." *Sperry*, 2020 IL App (2d) 180296, ¶ 21.

¶ 25    We find no significant difference between this case, *Lowry*, and *Sperry*. When the jury asked for the definition of "knowingly," defense counsel failed to request the instruction our supreme court created to address this issue. We see no strategic purpose for the failure to request the appropriate instruction. Following *Childs*, *Lowry*, and *Sperry*, we reverse the conviction and

remand for a new trial. Because of our resolution of the ineffective assistance of counsel issue, we need not address the trial court's violation of Supreme Court Rule 431(b) or the sentencing issue.

¶ 26 The double jeopardy clause of the United States Constitution prohibits retrial in cases where retrial would allow the State a second opportunity to supply sufficient evidence where the State did not do so in the first trial. *People v. Harris*, 2015 IL App (1st) 132162, ¶ 45, 35 N.E.3d 995. However, double jeopardy does not prohibit a retrial where the evidence presented at the first trial was sufficient to sustain a conviction. *Id.*

¶ 27 Because we find the evidence sufficient to support the conviction, retrial will not violate principles of double jeopardy. *People v. King*, 2020 IL 123926, ¶¶ 52-53. Therefore, we remand to the trial court for a new trial.

¶ 28                                III. CONCLUSION

¶ 29 Defendant's trial counsel provided ineffective assistance when he failed to ask the court to use the pattern jury instruction defining "knowingly" in response to a jury question about the definition of "knowingly." Accordingly, we reverse and remand for a new trial.

¶ 30 Reversed and remanded.