NOTICE
Decision filed 01/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240159-U

NO. 5-24-0159

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 22-CF-278 |
| | ) | |
| WALTER L. BOND, | ) | Honorable |
| | ) | Thomas E. Griffith, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in dismissing the defendant's untimely motion to reconsider sentence for lack of jurisdiction. As any arguments to the contrary would lack merit, we grant the defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant Walter Bond entered a partially negotiated guilty plea to one count of unlawful delivery of 15 to 100 grams of methamphetamine, in exchange for a sentencing cap of 30 years. He was sentenced to 22 years in the Illinois Department of Corrections (IDOC), followed by 18 months of mandatory supervised release (MSR), with credit for time previously served. He appeals from the denial of his motion to reconsider sentence. Bond's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial

1

merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), along with a memorandum of law in support of that motion.

¶ 3    OSAD gave proper notice to Bond. This court gave him an opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit, and he has done so. This court has examined OSAD's *Anders* motion and the accompanying memorandum of law, Bond's response to OSAD's motion, and the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 4                                    BACKGROUND

¶ 5    On March 17, 2022, the State charged Bond by information with two counts of unlawful delivery of 15 to 100 grams of methamphetamine (720 ILCS 646/55(a)(1), (a)(2)(C) (West 2020)). Both charges were Class X felonies, and both stated that Bond had previously been convicted in federal court of possession of cocaine with the intent to distribute.

¶ 6    At his arraignment Bond was informed of the charges. The court explained that they were not eligible for a sentence of probation and that he could receive a sentence in the range of 6 to 60 years in prison. Bond waived his preliminary hearing and pled not guilty.

¶ 7    The parties appeared for a plea agreement on October 13, 2022. The State told the court that Bond would plead guilty to the first count in exchange for a sentencing cap of 30 years to be served at 50%. The second count would be dismissed. The State asserted that Mr. Bond "qualifies as a habitual criminal eligible for natural life if he would get convicted of the top count." The court then admonished Bond regarding the charge, informing him of the sentencing range of 6 to 60 years, and that the charge was not probationable. It indicated that Bond could be eligible for a life

2

sentence based on his prior convictions. However, based on the plea agreement, the range would be from 6 to 30 years with "probably an 18 month term of mandatory supervised release."

¶ 8     Bond indicated that he understood the charges and potential penalties. The court admonished him that by pleading guilty, he was giving up his right to plead not guilty and have either a bench or jury trial, and the right to confront and cross-examine his accusers. He was further agreeing that the State could prove this count beyond a reasonable doubt. Bond indicated that he understood, that no one forced him to take the deal, and that no one made him any promises other than the plea terms. He also confirmed that counsel had answered his questions and that he had no other questions.

¶ 9     The State provided the court with a factual basis that included information from confidential sources and court-ordered eavesdropping recordings. The court questioned Bond about his prior federal case and sentence; he was sentenced to 188 months but was released early after serving 9 years. He was still on supervised release at the time of this case and believed he would have to serve the remainder of his federal sentence if he violated the terms of the supervised release. However, he believed that it would run concurrently with the present case. The court asked counsel for a jury waiver. The court accepted the waiver and the plea, found that there was a factual basis, and found that the plea was knowing, voluntary, and intelligently made.

¶ 10     The court held a sentencing hearing on December 6, 2022. The court indicated that the normal sentencing range was 6 to 60 years, due to the prior federal conviction, and that the sentence was eligible for day-for-day credit. The court asked the prosecutor and defense counsel if they agreed that Bond's sentence was eligible for an extended term because of the prior conviction, plea aside. The court also noted that Bond did not agree that he was eligible for an extended-term sentence. Defense counsel indicated that Bond had a prior federal conviction that carried a 20-year

sentence plus an additional 10 years because of a prior conviction, "so he's looking [at] up to 30." He added that Bond's position was that this "does not match up closely enough with our Class X elements and sentence" and so he was not eligible for an extended term.

¶ 11    The court stated that the charges against Bond in the present matter included his having a prior conviction. The court did not think that the "level" of the offense was relevant. It further stated that "[i]f it was just *** the normal extended-term sequence," the court would have had to find that the prior was greater than the Class X felony to be extended-term eligible; since Bond was charged with a prior, he was extended-term eligible by statute. The State agreed.

¶ 12    The court reiterated that "it's charged as him having a prior, which under the controlled substance statute gets him the double back end anyway." The court then explained that the typical sentence would be up to 60 years in prison, but the agreement had capped the potential sentence at 30 years. It stated that "whether the max would be 60 years, based on the prior or due to the defendant being extended-term eligible, it really is not germane to this cause."

¶ 13    The court sentenced Bond to 22 years in IDOC, noting that the sentence was eligible for day-for-day credit and would be followed by 18 months of MSR. This sentence would run concurrently with the federal sentence. The court stated that Bond would receive credit for time in custody from March 8, 2022.

¶ 14    The court informed Bond that he had the right to appeal. It explained that, to appeal, he had to file a written motion asking to withdraw the guilty plea within 30 days. He had to put all of the alleged errors in the motion, or they would be waived. The court would set a hearing on the motion. If successful, the court would vacate the plea and judgment, the dropped charges could be reinstated, and the matter would be set for trial. If denied, he would have 30 days to appeal. A transcript would be prepared at no cost and "appellate counsel would be appointed to assist [him]

with the appeal process, and trial counsel could be appointed to assist [him] with any post-plea motions." The written judgment was filed on December 7, 2022.

¶ 15    One year later, on December 7, 2023, Bond filed a *pro se* motion requesting that the court "look at his void sentencing." He asserted that there were two exceptions to Illinois Supreme Court Rule 604(d) that applied to his case—when challenging a sentence as not authorized by statute, and when challenging the statute under which he was convicted as facially unconstitutional.

¶ 16    Bond wrote that he had pled guilty to unlawful delivery of methamphetamine with a prior conviction, and the plea agreement included a cap of 30 years. He was sentenced "under the extended-term 6 to 60 for a prior." He did not agree with the extended-term eligibility at the sentencing hearing, but the court had agreed with the State that the extended term applied. Bond contended that a defendant is not eligible for sentencing under section 5-5-3.2(b)(1) of the Unified Code of Corrections if he had not been convicted of a Class X felony. 730 ILCS 5/5-5-3.2(b)(1) (West 2022). He asserted that he "does not want to take his plea back." However, he also noted that the State agreed to a sentencing cap of 30 years, but that was the maximum term available without the extended-term range.

¶ 17    Bond was previously convicted of possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1), (b)(1)(C) (2004)) with a sentencing range of 0 to 20 years. He indicated that "he was extended 10 more year[s] for a prior in federal court. The state could not extend this case to make this a case [*sic*] X felony." Therefore, he argued, the court erred in admonishing him that he faced a possible maximum sentence of 60 years in prison. He further asserted that the appellate court had held that the admonishment regarding a maximum possible sentence of 60 years was prejudicial error.

¶ 18    Bond wrote that he believed he had negotiated a reduction of 30, not 0, years to the maximum possible sentence. He asserted that he actually only faced a possible sentence of 30 years if he had gone to trial. Lastly, Bond requested an attorney. He attached an exhibit with information about his federal cases. It listed a 1999 case for possession with intent to distribute cocaine, with a sentencing guideline of between 151 to 188 months. The document also listed a 2007 arrest for distribution of cocaine, where he was sentenced to 188 months in custody followed by 6 years of supervised release.

¶ 19    On December 12, 2023, Bond filed a *pro se* motion making similar arguments, as well as discussing how to determine whether a federal case can be used to impose an extended-term sentence. He asserted that "the offense of possession with intent to deliver requires proof of the quantity and type of the contested substance, while the statute underlying his federal conviction does not." He stated that he received a life sentence that was overturned in October of 2023, and he returned home. Bond requested to "drop" his prior *pro se* motion and proceed on the new one. He also repeated his request for counsel.

¶ 20    On December 19, 2023, the parties appeared before the court. Bond was in federal prison at the time. Defense counsel opined that Bond's argument was based on a misreading of some case law he found in the law library at his facility, and Bond's misunderstanding that he was sentenced within the normal range, not the enhanced range. Counsel then acknowledged that he did not represent Bond on these motions unless the court ordered him to do so. The court asked the clerk to note that counsel was "present as friend of the Court." The court indicated that it construed the motion as a motion to reconsider sentence and found that it no longer had jurisdiction. Nevertheless, the court added that the motion lacked merit because Bond was sentenced "well within the sentencing range."

¶ 21 On December 19, 2023, Bond filed what he referred to as an amended *pro se* motion, raising similar arguments as the previous two motions. The court struck the filing as moot based on its prior ruling. On January 19, 2024, Bond filed a *pro se* "Notice Appeal Motion Reconsider Sentence Illinois Supreme Court Rule 604(d)," arguing that his sentence was void because he was improperly admonished that he faced extended-term sentencing.

¶ 22 He attached a letter that defense counsel had sent him, dated December 20, 2022, summarizing where Bond's case stood regarding sentencing and any possible postsentencing motions or appeal. Counsel wrote that he understood that Bond wanted to ask the judge to reconsider or appeal. He explained that he believed Bond was indeed eligible for an extended-term or life sentence based on the habitual criminal statute. He also explained how under *People v. Johnson*, 2019 IL 122956, he would have to move to withdraw the plea and could not simply ask for a reduced sentence or appeal.

¶ 23 Bond filed a notice of appeal on January 30, 2024. The court appointed OSAD as his appellate counsel. OSAD now moves to withdraw as counsel.

¶ 24                                    ANALYSIS

¶ 25 OSAD argues that the circuit court properly denied Bond's motion to reconsider sentence, and that there are no meritorious arguments to the contrary. In the memorandum supporting its *Anders* motion to withdraw as counsel, OSAD states that it considered raising two potential issues on appeal:

> (1) Whether the circuit court erred in dismissing Bond's motion to reconsider sentence for lack of jurisdiction; or

> (2) Whether any errors in the circuit court's admonitions would excuse Bond's failure to file a timely postplea motion.

7

OSAD has determined that these issues would be without arguable merit, and the court's dismissal of Bond's various motions to reconsider sentence was therefore proper. As we agree with counsel's assessment, we grant OSAD leave to withdraw.

¶ 26                          A. The Court's Jurisdiction to Consider Bond's Motion

¶ 27    Illinois Supreme Court Rule 604(d) sets forth the procedures that a defendant must follow to appeal from a judgment entered on a guilty plea. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). The rule states that no appeal shall be taken "unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." *Id.* Rule 604(d) further provides that

> "[n]o appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed ***." *Id.*

Here, the State agreed to a sentencing cap as part of the plea bargain. Thus, Bond's plea was a negotiated guilty plea, and he was required to file a motion to withdraw that plea before taking an appeal.

¶ 28    The timely filing of a Rule 604(d) motion "is a condition precedent to an appeal from a judgment on a plea of guilty." *People v. Flowers*, 208 Ill. 2d 291, 300-01 (2003). Without this, we are generally precluded from considering the appeal on its merits and must dismiss the appeal. *Id.* The question of whether a defendant complied with Rule 604(d) is subject to *de novo* review.

8

*People v. Cook*, 2023 IL App (4th) 210621, ¶ 32. A *pro se* defendant is not entitled to greater leniency and is expected to comply with the rules of procedure just as a defendant represented by counsel. *Id.* (citing *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 39).

¶ 29    In the present matter, Bond was sentenced on December 6, 2022. He was admonished by the circuit court regarding his right to appeal, including what he must do to exercise that right. The court specifically stated to Bond, "If you wish to appeal in this circumstance [of a partial plea], within 30 days of today's date, you'd have to file a written motion asking to withdraw your plea of guilty."

¶ 30    Bond filed his first *pro se* motion to reconsider sentence a year after sentencing, on December 7, 2023. In this motion, he expressed that he did not wish to withdraw his guilty plea, despite being notified of his need to do so by both the circuit court and defense counsel in counsel's December 20, 2022, letter. The court held a hearing on December 19, 2023, at which it noted that Bond had first filed this motion and then a second, nearly identical motion. Addressing the motions together, the court found that it no longer had jurisdiction, although it added that the substance of Bond's argument also lacked merit, as he had been sentenced "well within the sentencing range."

¶ 31    We find that the circuit court correctly dismissed Bond's motions to reconsider for lack of jurisdiction.

¶ 32                    B. The Court's Admonishments Pursuant to Rule 605(c)

¶ 33    Pursuant to the "admonition exception" to Rule 604(d)'s motion requirement, a defendant's failure to file a postplea motion as required by Rule 604(d) will not result in the loss of his right to direct appeal where the circuit court failed to properly admonish him pursuant to Rule 605(b) or (c). *People v. Foster*, 171 Ill. 2d 469, 473 (1996); *People v. Dunn*, 342 Ill. App. 3d 872, 877-78 (2003). However, the "admonitions exception" applies only where the defendant files a timely

9

notice of appeal without first filing the required postplea motion. *People v. Moore*, 2015 IL App (5th) 130125, ¶¶ 27-29 (citing *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34 (2011)). Where, as here, a defendant files nothing within 30 days of sentencing, the circuit court loses jurisdiction and cannot consider the merits of an untimely postplea motion, regardless of any defects in its Rule 605 admonitions. Here, Bond was sentenced on December 6, 2022, and the court's written judgment was filed the following day. Bond filed nothing until December 7, 2023, when he filed his *pro se* motion requesting that the court "look at his void sentencing." Consequently, we need not consider whether the circuit court substantially complied with Rule 605 in this case.

¶ 34    To the extent that Bond's challenge could be construed as a claim that his sentence is void, any such claim is meritless. Our supreme court abolished the void sentence rule in *People v. Castleberry*, 2015 IL 116916, finding it to be "constitutionally unsound" because "the 'inherent power' view of jurisdiction, on which the rule was based, could not be reconciled with the constitutional grant of jurisdiction and was at odds with [supreme court] opinions *** rejecting that view of jurisdiction in the civil context." *People v. Price*, 2016 IL 118613, ¶ 17.

¶ 35                                    CONCLUSION

¶ 36    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 37    Motion granted; judgment affirmed.